UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos Gregorio MARTINEZ, aka
Carlos Martinez Estrada,
Defendant–Appellant.

No. 93–50803.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1994.

Decided March 7, 1995.

■■■

Mary E. Maguire, Cohen & Hubachek, San Diego, CA, for defendant-appellant.

Larry A. Burns, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

■■■

Before: D.W. NELSON, NORRIS, and BOGGS *, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Carlos Gregorio Martinez appeals his convictions for armed carjacking, 18 U.S.C. § 2119, using or carrying a firearm during commission of a crime of violence, 18 U.S.C. § 924(c)(1), and being an armed career criminal, 18 U.S.C. § 924(e).

On appeal, Martinez argues that: (1) the Anti–Car Theft Act, 18 U.S.C. § 2119, was enacted in violation of the commerce clause; (2) section 2119 is void for vagueness and ambiguity; (3) section 2119 requires specific rather than general intent for conviction; (4) the imposition of consecutive sentences under section 924(c)(1) and section 2119 is a violation of double jeopardy; and (5) the jury should have been instructed on the consequences of finding the defendant not guilty by reason of insanity.

## I

### Commerce Clause

■■ Martinez argues that Congress exceeded its power under the Commerce Clause in enacting section 2119, which provides in relevant part:

> Whoever, possessing a firearm … takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, [is guilty of carjacking].

This argument has been rejected by every court that has addressed it, save one.[1] As the Sixth Circuit explained:

> It may well be that the carjacking statute is unwise and encroaches on traditional views of federalism … but it is not unconstitutional under current Commerce Clause doctrine…. It is obvious that carjackings as a criminal activity have an effect on interstate travel and the travel of foreign citizens to this country.

*United States v. Johnson,* 22 F.3d 106, 109 (6th Cir.1994).

We may "invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce." *Hodel v. Indiana,* 452 U.S. 314, 323–24, 101 S.Ct. 2376, 2383, 69 L.Ed.2d 40 (1981). Here, Congress made a variety of findings showing that carjacking has at least a "de minimis effect" on interstate commerce.[2] *Perez v. United States,* 402 U.S. 146, 152–53, 91 S.Ct. 1357, 1360–61, 28 L.Ed.2d 686 (1971). We cannot say that Congress had no rational basis for its findings.

---

* Honorable Danny J. Boggs, United States Circuit Judge, Sixth Circuit, sitting by designation.

1. *See, e.g., United States v. Overstreet,* 40 F.3d 1090 (10th Cir.1994); *United States v. Harris,* 25 F.3d 1275 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 458, 130 L.Ed.2d 366 (1994); *United States v. Stith,* 824 F.Supp. 128 (S.D.Ohio 1993), *aff'd* 1994 WL 577135, 1994 U.S.App. LEXIS 30157 (6th Cir.1994); *United States v. Eskridge,* 818 F.Supp. 259 (E.D.Wis.1993), *aff'd sub nom, United States v. Pointer,* 17 F.3d 1070 (7th Cir. 1994); *United States v. Watson,* 815 F.Supp. 827 (E.D.Pa.1993). *But see United States v. Cortner,* 834 F.Supp. 242 (M.D.Tenn.1993), *rev'd sub nom United States .v. Osteen,* 30 F.3d 135 (6th Cir. 1994).

2. Specifically, Congress relied on the increasing rate of motor vehicle theft, the inability of local law enforcement agencies to prosecute perpetrators effectively, and the emergence of carjacking as a "high-growth industry" that involves taking stolen vehicles to different states to retitle, exporting vehicles abroad, or selling cars to "chop shops" to distribute various auto parts for sale. 18 U.S.C.A. § 2119 (West 1993) (Editorial Notes); 138 Cong.Rec. H 11821–22 (daily ed. Oct. 5, 1992); H.R.Rep. No. 102–851(I), 102nd Cong., 2d Sess. 13–17, *reprinted in* 1992 U.S.C.C.A.N. 2829, 2833.

Martinez also claims that the nexus between carjacking and commerce is insufficient because the statute requires only that the vehicle stolen has been in interstate commerce at one time. However, a *present* nexus between a regulated activity and interstate commerce is not required under the Commerce Clause. *See United States v. Haddad,* 558 F.2d 968, 972 (9th Cir.1977) (upholding a federal firearm statute against claim that prior interstate transfer was not sufficient under the Commerce Clause to prohibit subsequent receipt by a felon). The carjacking statute does not exceed Congress' power under the Commerce Clause.[3]

## II

### Intent

■ Martinez argues that carjacking is a specific intent crime. The district court ruled that it was a general intent crime and refused to instruct on the defense of diminished capacity because that defense is only cognizable for specific intent crimes. *See United States v. Sneezer,* 983 F.2d 920, 922 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 113, 126 L.Ed.2d 79 (1993); *United States v. Twine,* 853 F.2d 676, 679 (9th Cir. 1988). We agree with the district court that the carjacking statute is a general intent statute.

■ When a statute does not contain any reference to intent, general intent is ordinarily implied. *United States v. Sneezer,* 983 F.2d at 923; *United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979). Martinez argues that this presumption should be overridden because carjacking is analogous to larceny, which is a specific in-

tent crime. The structure, language, and legislative history of section 2119 indicate that the more appropriate analogy is to robbery. We have interpreted the federal bank robbery statute, which uses the same language as the carjacking statute, to require only general intent.[4] *United States v. Darby,* 857 F.2d 623, 626 (9th Cir.1988) (citing *United States v. Hartfield,* 513 F.2d 254 (9th Cir.1975)). Moreover, the House Judiciary Committee's report on section 2119 stated that "the definition of [carjacking] tracks the language used in other federal robbery statutes." H.R.Rep. No. 102–851(I), 102nd Cong., 2d Sess. 13–17, *reprinted in* 1992 U.S.C.C.A.N. 2829, 2833. We see no reason to distinguish between the bank robbery and carjacking statutes with respect to intent.

■ Finally, Martinez suggests that carjacking must be treated as a specific intent crime in this case because the district court instructed the jury that the defendant must act "willfully." However, the jury instruction did not transform carjacking into a specific intent crime.[5] While the district court's decision to give a specific intent instruction for a general intent crime may have created a "windfall" for the defendant, it did not entitle him to a diminished capacity defense, which is only cognizable for specific intent crimes. *United States v. Porter,* 431 F.2d 7 (9th Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269 (1970).

## III

### Double Jeopardy

■ Martinez next argues that his convictions pursuant to section 924(c)(1) and section 2119 violate the Double Jeopardy Clause of the Fifth Amendment because both stat-

---

3. Our conclusion is bolstered by the Supreme Court's decision in *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). In *Scarborough,* the Supreme Court held that a statute prohibiting receipt of a firearm by a felon was permissible under the Commerce Clause because it only applied if the firearm received had at one time traveled in interstate commerce. *Id.* at 566–67, 97 S.Ct. at 1964–65; *see also Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976) (drawing same conclusion with respect to other firearms statutes). The nexus required by the carjacking stat-

ute is certainly equivalent to that required by the federal firearms provisions.

4. 18 U.S.C. § 2113(a) provides, in relevant part: "Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another ... any property or money ... [shall be guilty of bank robbery]."

5. Requiring that a defendant act intentionally or voluntarily is consistent with general, rather than specific intent. *United States v. Smith,* 638 F.2d 131 (9th Cir.1981).

utes punish the same conduct. Whether punishment under both of these statutes is barred raises a question of first impression in this Circuit.

The Double Jeopardy Clause does not prevent the government from attempting to prove violations of two different criminal statutes based on the same course of conduct *provided that Congress clearly intended to subject defendants to punishment for each of them. Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). In our view, Congress clearly expressed its intent to subject armed carjackers to punishment under both section 924(c)(1) and section 2119.[6]

The text of section 924(c)(1) states that the enhanced punishment under 924(c)(1) for the use of a weapon during a crime of violence shall be "in addition to the punishment provided for such crime of violence." 18 U.S.C. § 924(c)(1). In other words, the punishment for carjacking with the use of a firearm under 924(c)(1) is separate and distinct from any punishment provided by the carjacking statute. Moreover, any lingering doubt as to Congress' intent was removed by the inclusion of the additional mandate that a term of imprisonment imposed under 924(c)(1) shall not "run concurrently with any other term of imprisonment including that imposed for the crime of violence ... in which the firearm was used or carried." *Id.*

In sum, we follow seven of our sister circuits in holding that the text clearly illustrates that Congress intended to authorize cumulative punishment for use of a weapon during any crime of violence, including carjacking. *See United States v. Moore*, 43 F.3d 568 (11th Cir.1994); *United States v. Overstreet*, 40 F.3d 1090 (10th Cir.1994); *United States v. Jones*, 34 F.3d 596 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995); *United States v. Johnson*, 32 F.3d 82 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 650, 130 L.Ed.2d 554 (1994); *United States v. Mohammed*, 27 F.3d 815 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994); *United States v. Johnson*, 22 F.3d 106 (6th Cir.1994); *United States v. Singleton*, 16 F.3d 1419 (5th Cir. 1994). Thus, Martinez was not subjected to double jeopardy.

Notwithstanding the clarity of the text of section 924(c)(1), Martinez argues that Congress' intent to authorize cumulative punishment in this case is not clear. First, he argues that section 924(c)(1) does not authorize cumulative punishment for statutory offenses that require use of a firearm as *an element*, such as carjacking, rather than merely to enhance a defendant's sentence.

As it was originally enacted, section 924(c)(1) applied to "any crime of violence." In 1984, Congress amended section 924(c)(1) to clarify that the term "any crime of violence" includes "a crime of violence or drug trafficking crime which provides for an *enhanced punishment* if committed by the use of a deadly or dangerous weapon or device." 18 U.S.C. § 924(c)(1) (emphasis added).[7] Martinez claims that section 924(c)(1) *still* does not apply to crimes for which possession of a firearm is an element. This argument lacks merit.

---

**6.** The usual first step in this analysis is to apply the test established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which asks whether each statute requires proof of an element not included in the other statute. Because it is assumed that Congress "ordinarily does not intend to punish the same offense under two different statutes," *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980), failing the *Blockburger* test raises a presumption that Congress did not intend cumulative punishment. However,

Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*,

a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

459 U.S. at 369, 103 S.Ct. at 679. Because we find Congress' intent in this case to be clear, we need not go through the *Blockburger* analysis.

**7.** Specifically, section 924(c)(1) was amended to correct two Supreme Court decisions, *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) and *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980), which had held section 924(c)(1) inapplicable to statutory offenses that already included individualized "enhancement" provisions for the use of a firearm.

There is no reasonable motive that we can attribute to Congress for authorizing double punishment for crimes that contain a penalty enhancement for use of a firearm, but not for crimes that require use of a firearm as an element. *See, e.g., Singleton,* 16 F.3d at 1424–25 (rejecting this argument). Section 924(c)(1) establishes a categorical rule that applies to all crimes of violence, with no apparent exceptions. Moreover, the legislative history accompanying the 1984 amendment indicates that 924(c)(1) was revised "to ensure that *all persons who commit Federal crimes of violence*" are covered. S.Rep. No. 225, at 312–13, 1984 U.S.C.C.A.N. at 3182, 3490–91.

Finally, we have considered and rejected this argument with respect to the application of section 924(c)(1) in conjunction with another federal firearms provisions, for which possession of a firearm is a necessary element. *United States v. Mathews,* 36 F.3d 821, 823 (9th Cir.1994) (upholding cumulative punishment under sections 924(c) and 844(i)); *United States v. Browne,* 829 F.2d 760, 767 (9th Cir.1987) (upholding cumulative punishment under sections 924(c) and 2113(d)), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988); *United States v. Springfield,* 829 F.2d 860, 865 (9th Cir.1987) (upholding cumulative punishment under § 924(c)(1) and § 1202(a)); *see also United States v. Hunter,* 887 F.2d 1001, 1003 (9th Cir.1989) (upholding cumulative punishment under sections 924(c)(1) and 922(g)(1)), *cert. denied,* 493 U.S. 1090, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990). Thus, Martinez' argument is foreclosed by these decisions.

Martinez next argues that Congress' silence about cumulative punishment in the text or legislative history of section 2119, the later and more specific statute, is dispositive. Specifically, he argues that section 2119 supersedes any Congressional intent implied by section 924(c)(1). The order in which the statutes were enacted, and Congress' failure to make its intent clear in both statutes, is irrelevant. We find the reasoning of Judge Wisdom, in *United States v. Singleton,* 16 F.3d 1419 (5th Cir.1994), convincing:

> once Congress makes a plain statement of its intent to stack punishments in a speci-

fied class of crimes, it need not reiterate that intent in any subsequent statutes that fall within the previously defined class.... [T]he order in which the statutes are enacted is irrelevant to the analysis—as long as Congress has clearly indicated an intent to impose cumulative punishments in either statute, the statutes pass constitutional muster.

*Id.* at 1427–28.

■ Requiring an independent statement of intent in every substantive statute would contradict *United States v. Blocker,* 802 F.2d 1102, 1104–05 (9th Cir.1986), in which we held that Congress intended defendants to be convicted under the armed bank robbery statute, 18 U.S.C. § 2113(d), and section 924(c)(1) even though the bank robbery statute was enacted after and was more specific than section 924(c)(1). Thus, we reject Martinez' argument that every statute enacted subsequently to section 924(c)(1) must include a statement of intent that it be covered by the phrase "any crime of violence."

## IV

### Vagueness or Ambiguity

■ Martinez next argues that section 2119 is void for vagueness. Because the carjacking statute does not implicate First Amendment rights, it may be challenged for vagueness only as applied. *United States v. Fitzgerald,* 882 F.2d 397, 398 (9th Cir.1989); *United States v. Ocegueda,* 564 F.2d 1363, 1365 (9th Cir.1977). A criminal statute is not vague if it provides adequate notice in terms that a reasonable person of ordinary intelligence would understand that her conduct is prohibited. *United States v. Hogue,* 752 F.2d 1503, 1504 (9th Cir.1985).

■ Adequate notice was clearly given in this case. The carjacking statute prohibits "taking a motor vehicle" while "possessing a firearm." The terms used are clear and easy to understand, and reasonably define the prohibited behavior. Martinez used a firearm to cause a passing driver to slow down, and eventually to relinquish her vehicle. This conduct is clearly prohibited by the statute. Thus, because section 2119 is not

vague as applied to Martinez, we reject this challenge.[8]

Martinez also argues that section 2119 is void for ambiguity because it does not clearly specify what kind of conduct Congress wanted to regulate. This ambiguity, he argues, must be resolved in favor of lenity under *Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1271, 39 L.Ed.2d 782 (1974). No ambiguity arose from the manner in which the statute was narrowly applied to Martinez in this case. Consequently, he cannot complain about the ambiguity that could arise in hypothetical applications of the law such as the statute being applied to someone who constructively, but not actually, possesses a firearm. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191–92, 71 L.Ed.2d 362 (1982). There can be no question that Martinez' conduct falls within the ambit of the statute, and thus there is no justification for applying the rule of lenity. *See Gozlon–Peretz v. United States*, 498 U.S. 395, 410, 111 S.Ct. 840, 849, 112 L.Ed.2d 919 (1991).

### V

#### Insanity Instruction

Martinez contends that the district court erred in refusing to give the jury the following instruction:

> If you find the defendant not guilty only by reason of insanity, the law requires that he be committed to a suitable facility until such time, if ever, that the court finds he may be safely released back into the community.

This contention lacks merit. Federal district courts are not required, either under the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 4241–47, or as a matter of general

federal practice, to instruct juries about the consequences of a not guilty by reason of insanity verdict. *Shannon v. United States*, — U.S. —, — – —, 114 S.Ct. 2419, 2424–26, 129 L.Ed.2d 459 (1994).

The convictions are AFFIRMED.

---

8. Martinez' reliance on *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), is misplaced. The statute at issue in *Kolender* required people who loiter or wander on the streets to provide credible and reliable information to account for their presence when stopped by a police officer. The Supreme Court struck it down on vagueness and overbreadth grounds. This holding, however, cannot be extracted from the "unique fact situation," implicating a signifi-

cant amount of constitutionally protected conduct, that it presented. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1348 (9th Cir.1984). The statute at issue in this case does not present any similar constitutional concerns.